# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

GREGORY SMITH,

                **Plaintiff,**

vs.                                         Civ. No.  07-720 JH/RHS

ALLSTATE INSURANCE
COMPANY,

                **Defendant.**


## MEMORANDUM OPINION AND ORDER

        This matter is before the Court on *Defendant's Motion for Summary Judgment* [Doc. No. 51]. In this case, Plaintiff Greg Smith ("Smith") contends that he applied for employment with Defendant Allstate Insurance Company ("Allstate"), and that Allstate rejected his application because of his disability.  Smith has asserted a claim under the New Mexico Human Rights Act ("NMHRA") as well as claims for breach of contract and breach of duty of good faith and fair dealing.  Allstate moves for summary judgment on all three claims.  After considering the arguments, the law, and the evidence submitted by the parties, the Court concludes that the motion should be granted in its entirety.

## LEGAL STANDARD

        Summary judgment is appropriate "[i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ .P. 56(c). "[S]ummary judgment will not lie if the dispute is about a material fact that is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (concluding that summary judgment is appropriate when the evidence could not lead the trier of fact to find for the nonmoving party).

In evaluating a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 1572 (1970). The movant has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  In responding to a motion for summary judgment, however, the nonmoving party "may not rest upon its mere allegations ... but ... must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see Celotex*, 477 U.S. at 324.

## FACTS

The facts[1] of this case, viewed in the light most favorable to the Smith, are as follows.

In 2004, Dr. Bradley Keller diagnosed Smith with obsessive compulsive disorder ("OCD") and prescribed various medications to treat Smith's condition.

In late 2005, Smith applied for a job with Allstate as an entry level claim adjuster, an at-will position.  Allstate does not hire adjusters for a fixed or minimum length of time, nor do they sign a written contract.  The job application process consists of four steps: an initial, typically telephonic screening interview by a member of Allstate's human resources department; a timed, multiple

---

[1] The Court notes that counsel for both Smith and Allstate have violated Rule 5.2(a) of the Federal Rules of Civil Procedure by filing documents containing Smith's unredacted personal information, including name, date of birth and social security number.  The Court admonishes counsel to review Rule 5.2 and cautions all counsel to be more circumspect with personal information in the future.

choice, three-part screening test known as the "LEAP" test; an in-person interview with a local Allstate manager; and an internal hiring decision by the Human Resources Department. Once Allstate makes the decision to extend an offer of employment, such offer is conditioned upon the applicant passing a background check. In 2005, Allstate hired only 50% of claim adjuster applicants nationwide who passed the LEAP test.

Smith applied for employment with Allstate online through an employment website. After receiving Smith's application, George Mardini, a recruiter with Allstate's Human Resources Department in Illinois, called Smith in New Mexico to conduct an initial telephonic interview. During that conversation, Mardini told Smith that he wanted to schedule him to take the LEAP test. Mardini explained the LEAP test but did not inform Smith that the test would be given under a time restriction.[2] Before taking the test, Smith did not inform Mardini or anyone else at Allstate that he had a medical condition or that he needed accommodation.

Smith took the LEAP test and completed each section within the allotted time, but did not receive a passing score.[3] Allstate informed Smith the same day that he had not passed the test. After Smith received his "not qualified" score, he called Mardini and recorded their conversation without Mardini's knowledge. In that conversation, Smith told Mardini for the first time that he has OCD and that he believed his condition had caused him to fail the test. Smith asked Mardini to

---

[2] Allstate disputes this point and has come forward with Mardini's Declaration in which he states that he did inform Smith that the test had three separately timed segments, and that Smith indicated he understood that fact. However, in his deposition Smith testified that Mardini did not tell him in advance that the LEAP test would be timed. For purposes of this summary judgment analysis, the Court must construe this factual dispute in the light most favorable to Smith.

[3] In 2005, only 59% of applicants for entry level claim adjuster positions at Allstate nationwide received a passing score on the LEAP test.

accommodate him on the LEAP test by allowing him to retake it without a time limit.  Mardini told

Smith that he was not surprised Smith had failed the test and that the test was not job related.

Mardini informed Smith that Allstate's policies permit applicants to take the test only once per year;

Mardini also said that he could not make a decision on Smith's request and needed to consult with

more senior Allstate officials.  Later, Mardini called Smith back and told him that he needed a

simple, one-page note from Smith's doctor explaining Smith's disability, which he would then send

on to higher ranking Allstate officials who could waive the LEAP test requirement.[4]  Smith did not

testify that Mardini promised him that Allstate would hire him if he provided a note from his doctor.

Smith then approached his psychiatrist, Dr. Keller, about writing a letter to Allstate on his

behalf.  He gave Dr. Keller a sample letter.  Dr. Keller's office later provided Smith with a letter

dated November 1, 2005 (that is not on letterhead) which states in full:

> To Whom It May Concern: Greg Smith is a patient under my care, since August
> 2004.  He is presented with the following diagnosis: Obsessive Compulsive
> Disorder.  Mr. Smith is currently on Celexa 20mg.  Greg reports he functions much
> better at work if some special accommodations can be met by his employer.  Mr.
> Smith will be a more productive employee if he is accommodated.  Respectfully, BJ
> Keller MD.

On November 5, 2005, Smith faxed this letter to Mardini, who then forwarded it to Bob Arend, an

Allstate Human Resources Manager and LEAP Administrator.   Arend informed Mardini that

Allstate would not waive the requirement that Smith wait one year to retake the LEAP test.  Arend

said that there were two reasons for this decision: that Smith had not requested accommodations

before taking the LEAP test and because the information provided in Dr. Keller's letter was not

sufficient to support granting of any accommodations on the test.  Mardini called Smith and told him

---

[4] Again, the Court is aware that Allstate disputes Smith's version of the conversation with
Mardini.

the letter was insufficient and that he would not be permitted to retake the LEAP test.

On January 31, 2006, Smith asked Dr. Keller for another, more specific letter stating that he could not take timed tests. Dr. Keller informed Smith that he was not qualified to write such a letter, and that he would need to see a Ph.D. psychologist. On May 25, 2006, Smith filed an EEOC charge of discrimination against Allstate.

## DISCUSSION

## I. DISABILITY DISCRIMINATION UNDER THE NMHRA

The NMHRA, NMSA 1978, § 28-1-1 et seq. and § 28-1-9 to § 28-1-14, prohibits employment discrimination based on "physical or mental handicap or serious medical condition." *Id*. at § 28-2-1(A). The New Mexico Supreme Court has concluded that "it is appropriate to rely upon federal adjudication for guidance in analyzing a claim under the [NMHRA]," *Trujillo v. N. Rio Arriba Elec. Co-op, Inc.*, 2002-NMSC-004, ¶ 8, 131 N.M. 607, and in fact both parties have done so in their briefs, citing to federal jurisprudence interpreting the Americans With Disabilities Act ("ADA").

The ADA provides in relevant part that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, [] hiring. . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To establish a prima facie case of discrimination under the ADA, a plaintiff must demonstrate "'(1) that [he] is disabled within the meaning of the ADA; (2) that [he] is qualified—with or without reasonable accommodation; and (3) that [he] was discriminated against because of [his] disability.'" *McKenzie v. Dovala*, 242 F.3d 967, 969 (10th Cir. 2001) (quoting *Aldrich v. Boeing Co.*, 146 F.3d 1265, 1269 (10th Cir. 1998)). The Supreme Court has found that these terms need to be interpreted strictly to create a demanding standard for qualifying as disabled."

5

*Toyota Motor Mfg., Inc. v. Williams*, 534 U.S. 184, 197 (2002).

### A.     Disability or Serious Medical Condition

The ADA defines the term "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). A "major life activity" is a "basic activity that the average person in the general population can perform with little or no difficulty," and includes walking, standing, sitting, lifting, learning, and working. *Doyal v. Okla. Heart, Inc.*, 213 F.3d 492, 495-96 (10th Cir. 2000) (quotation marks and citation omitted). One is "substantially limited" in a major life activity if he is "(i) [u]nable to perform a major life activity that the average person in the general population can perform; or (ii) [s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j)(1).

For the purposes of this motion, the parties do not dispute that Smith has been diagnosed with OCD.[5] However, Allstate argues that there is no evidence that Smith's OCD constituted a

_____

[5] In his deposition, Smith testified that he also had been diagnosed with Tourette's Syndrome ("TS") at some point in the past, though he cannot remember when that diagnosis took place. When asked if he has TS, Smith responded, "I think I have some, yes." This hardly appears to be enough to create a fact issue as to whether Smith actually has TS. Further, Smith's own legal arguments regarding his alleged disability center almost exclusively on his diagnosis of OCD. However, even if one assumes that Smith is afflicted with TS, that would not alter the Court's decision in this case because Smith has failed to come forward with any evidence demonstrating that his TS, either alone or in conjunction with OCD, substantially limits him in a major life activity. The two unreported district court cases that Smith cites, *Purcell v. Pennsylvania Dept. of Corrections*, 1998 WL 10236 (E.D. Pa. Jan. 9, 1998) (describing the medical evidence regarding plaintiff's TS symptoms and the way in which they interfered with his daily life) and *Lanci v. Arthur Andersen, LLP*, 2000 WL 329226 (S.D.N.Y. Mar. 29, 2000)

disability or serious medical condition in late 2005, when he applied for the claims adjuster position. On the other hand, Smith contends that his OCD substantially limited him in the major life activities of caring for himself, performing manual tasks, learning, working, and interacting with others.  In support of his argument, Smith relies exclusively on his own deposition testimony; he has not come forward with expert opinions, the testimony of any treating physicians, or evidence from friends or family members regarding the nature and extent of his impairment.

> 1.   Caring for himself

"Caring for one's self 'encompasses normal activities of daily living; including feeding oneself, driving, grooming, and cleaning home.'"  *Holt v. Grand Lake Mental Health Ctr., Inc.*, 443 F.3d 762, 767 (10th Cir. 2006) (quoting *Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown*, 294 F.3d 35, 47 (2d Cir. 2002)).  In support of his argument that he is substantially limited in caring for himself, Smith points to his deposition testimony in which he states that, due to his OCD, he has "a germ problem" and  he does not want other people touching his things.  In addition, he repeats certain tasks over and over, such as checking water faucets and doors and washing his hands.  Finally, he points to testimony in which opposing counsel asked whether Smith's ability to comprehend and analyze information was affected by OCD.  Smith responded affirmatively, but he stated that it was because he performs rituals when he is under stress and time tested, and therefore he is not thinking about the new material he is working on, but rather about his OCD.  He then admitted that he was not sure if a medical health professional had ever told him that OCD affects his ability to comprehend and analyze information.  This is the sum total of the

_____

(same), are easily distinguishable because in those cases the plaintiffs came forward with sufficient evidence of the manner and extent to which their TS affected their major life activities in order to create a genuine fact issue on disability.  Smith has failed to do that.

evidence Smith has presented regarding his alleged limitations in caring for himself.

The Court concludes that the foregoing is insufficient as a matter of law to create a triable fact issue.  Nothing in the above testimony indicates the manner or extent to which Smith's OCD affects his ability to care for himself as compared to the average person in the general population. Indeed, the testimony Smith cites is so brief and vague that one can glean little from it.  Rather, the Court is left to guess at factors such as the nature and severity of the impairment, the duration or expected duration of the impairment, and the permanent or long term impact of the impairment on Smith.  Smith's conclusory pronouncement of a substantial limitation is not enough.

2.   Performing manual tasks

In *Williams*, 534 U.S. at 196, the Supreme Court addressed the question of what a plaintiff must demonstrate to establish a substantial limitation in the specific major life activity of performing manual tasks.  "In order for performing manual tasks to fit into this category—a category that includes such basic abilities as walking, seeing, and hearing—the manual tasks in question must be central to daily life." *Id*. at 197.  In other words, "to be substantially limited in performing manual tasks, an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives." *Id*. at 198.  Further, the defendant is entitled to summary judgment "when the evidence shows a plaintiff is restricted from doing a few specific tasks, but can otherwise perform a variety of manual activities." *Holt*, 443 F.3d at 766.

To support his argument that he is substantially impaired in performing manual tasks, Smith points to deposition testimony in which he stated, "I am light-headed all the time due to stress."  He also stated that for the past two years, he can no longer ride a bike or lift weights.  Otherwise, he conceded that his impairment was "more mental than physical."  Again, this sparse testimony is

8

insufficient because it simply contains too little information.  Smith has failed to show how light-headedness has prevented to severely restricted his ability to perform a variety of manual activities that are of central importance to most people's lives.  Further, the Court finds that the specific activities of riding a bicycle and lifting weights are not activities of central importance to most people's lives.

3.    Learning

In order to survive summary judgment, Smith must show that his impairment significantly restricts his ability to learn.  In evaluating this claim, the Court  must consider whether he is unable to learn in comparison to the average person in the general population.  *See* 29 C.F.R. § 1630.2(j)(i)-(ii).

To support his contention that he is substantially limited in learning, Smith turns again to the same vague deposition testimony upon which he has relied with regard to caring for himself and performing manual tasks: that he engages in rituals of repetitive behavior, especially when reading or testing under time pressure.  Smith argues, without support, that "this indubitably affects the manner and rate at which he is able to learn and embrace new material."  However, many people do not perform well on exams taken under time pressure.  That fact does little to illuminate the question of whether Smith is substantially impaired in learning new material as compared with the average person in the general population.  Smith's unsupported argument regarding his ability to learn fails to meet the standard above, and therefore is insufficient to create a genuine issue of material fact.

4.    Working

Smith contends that he is substantially limited in the major life activity of working.  With respect to working, federal regulations provide:

(i)  The term  substantially limits means significantly restricted in the ability to

9

perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.

(ii) In addition to the factors listed in paragraph (j)(2) of this section, the following factors may be considered in determining whether an individual is substantially limited in the major life activity of "working":

> (A) The geographical area to which the individual has reasonable access;
> (B) The job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (class of jobs); and/or
> (C) The job from which the individual has been disqualified because of an impairment, and the number and types of other jobs not utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (broad range of jobs in various classes).

29 C.F.R. § 1630.2(j)(3).

In support of his claim that he is substantially limited in working, Smith advances two arguments. First, he contends that "most individuals with Plaintiff's level of education and training[6] could be expected to have a record of consistent and ongoing employment," and the fact that Smith has been largely unemployed and receiving disability benefits for much of his adult life shows that his disability has repeatedly caused him to lose employment. Doc. No. 66 at p. 14. However, Smith cites no evidence to show that his OCD has caused him repeatedly to lose employment.[7]  Second,

---

[6] Smith's evidence on this issue is somewhat foggy.  He testified in his deposition that he thinks he holds a bachelor's degree in university studies, although he indicated it might be a Bachelor of Science degree.  Smith Depo. at ¶ 33.  Smith does not specify what "training" he has received.

[7] Smith does cite to page 9 of his deposition, but the Court is unable to find that page in the record.  Furthermore, Smith does not dispute Allstate's Facts Nos. 28-30, which state that Smith has been unsuccessful in his claims for disability discrimination against several former employers.  This too undermines his contention that his record of unemployment demonstrates that his OCD prevents him from working.

Smith argues that Dr. Keller's note listing his diagnosis with OCD and describing his employment difficulties as a result demonstrates that he is substantially impaired in working. Again, the Court disagrees. Dr. Keller's note does nothing more than recite Smith's diagnosis and then state what Smith allegedly told Dr. Keller, i.e., that he "reports" that he functions much better at work if he is provided with some unspecified accommodation. Dr. Keller's note does not demonstrate that Smith's OCD significantly restricts his ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities.

### 5.    Interacting with others

The Tenth Circuit has not decided whether interacting with others is a major life activity, though it has noted the split in other circuits on this question. *Steele v. Thiokol Corp.*, 241 F.3d 1248, 1255 (10th Cir. 2001). Assuming, without deciding, that interacting with others is a recognized major life activity, "'mere trouble getting along with co-workers is not sufficient to show a substantial limitation.'" *Steele*, 241 F.3d at 1255 (citing *McAlindin v. County of San Diego*, 192 F.3d 1226, 1235 (9th Cir. 1999)). Thus, Smith would have to show that he is unable to interact with people in general on a regular basis. However, Smith fails to come forward with any evidence on this issue, instead relying upon his conclusory, unsupported assertion that he is more limited than the average person in his ability to interact with others. This is insufficient as a matter of law.

### B.    Smith's Other Arguments

Next, Smith contends in conclusory fashion that even if he is not disabled under the ADA, he does suffer from a "serious medical condition" protected by the NMHRA. He fails to explain how this is true, given that New Mexico courts look to the ADA when interpreting the NMHRA. Smith cites only a New Mexico Department of Labor, Human Rights Division regulation from 1988.

11

However, that regulation is apparently no longer in effect, as this Court is unable to locate it in the New Mexico Administrative Code.  Even if it were in effect, the regulation would not assist Smith because it requires evidence of either a medical condition as defined by an appropriate medical authority through documentation or direct witness of a clearly visible disablement.  Smith has provided neither.

Having found that Smith has failed to show the existence of a genuine issue of material fact as to whether he is substantially limited in a major life activity, the Court need not reach the questions of whether Smith was otherwise qualified for the claims adjuster position, whether he made a timely and reasonable request for accommodation, or whether his receipt of disability benefits prevent him from asserting a claim for disability discrimination.  Allstate is entitled to summary judgment on Smith's claim in Count I of the Amended Complaint.

## II.   BREACH OF CONTRACT, PROMISSORY ESTOPPEL, AND BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

Smith's Amended Complaint asserts that "Mardini represented to Plaintiff that his test score would be waived *and he would thus be hired* if he submitted documentation from his physician. These representations formed a binding contract with Defendant/Appellee."  Doc. No. 26 at ¶ 21 (emphasis added).  Thus, Smith has pled a breach of contract to hire, although at times he argues the claim as though it is one for promissory estoppel.  In his Amended Complaint Smith does not request injunctive relief requiring Allstate to hire him; rather, he requests money damages flowing from the alleged breach of Allstate's promise.

However, in his deposition testimony Smith stated that Mardini told him that he needed Smith to provide proof of his disability in the form of a "simple doctor's note" "in order to waive the test."  Smith Depo. at pp. 103-104.  In other words, Smith does not come forward with any

12

evidence of a promise that if he provided a doctor's note Allstate would hire him.  Rather, he presents evidence only that Allstate promised to waive the second step of the four-step hiring process, which means that he still would be subject to another interview, an internal hiring decision, and a background check before Allstate could offer him employment.[8]  Smith has failed to come forward with evidence demonstrating that after an in-person interview, Allstate would have made the decision to hire him or that he would have passed the requisite background check.  Thus, even assuming Allstate breached a promise to waive the LEAP test, Smith has failed to demonstrate a triable fact issue that he is entitled to the damages he seeks.

Furthermore, the alleged "promise" on which Smith relies is too vague to constitute the basis for a binding contract.  In New Mexico, an employment relationship is "at will" and either the employer or the employee may terminate the relationship absent an express contract to the contrary. *See Gormley v. Coca-Cola Enters.*, 2004-NMCA-021, 135 N.M. 128, 134, 85 P.3d 252, 258 (2003) (citing *Lopez v. Kline*, 1998-NMCA-016, 124 N.M. 539, 953 P.2d 304 (1997)). An exception to the general rule, however, exists when there is an implied contract limiting the employer's authority to discharge. *See id.*  An implied contract may be found (i) in written or oral representation; (ii) in the parties' conduct; or (iii) in a combination of representations and conduct.  *See id.*, 135 N.M. at 134-35, 85 P.3d at 258-59 (citing *Newberry v. Allied Stores, Inc.*, 108 N.M. 424, 427-28, 773 P.2d 1231, 1234-35 (1989)).   In *Gormley v. Coca-Cola Enterprises*, the Court of Appeals held that, whether an implied contract exists is a question of fact, based on the totality of the circumstances, including the employer's oral, explicit, and definite representation. *See* 108 N.M. at 134-35, 85 P.3d at 258-259 (citing *Hartbarger v. Frank Paxton Co.*, 115 N.M. 665, 669, 857 P.2d 776, 780 (1993);

---

[8] Smith does not dispute that Allstate employs the four-step hiring process for claims adjusters.

13

*Garrity v. Overland Sheepskin Co.*, 121 N.M. 710, 917 P.2d 1382 (1996)).  The existence of an implied contract involves a determination of whether an employee's expectations regarding the terms of her employment are reasonable.  *See Hartbarger*, 115 N.M. at 672 ("An employer does not have to issue a policy statement limiting its power to discharge, but if the employer chooses to do so and creates a reasonable expectation on the part of the employee, it is bound to fulfill that expectation.").  This, in turn, depends in large measure upon whether promises or offers made by the employer were sufficiently explicit to give rise to the reasonable expectations by the employee. *Id*.  ("In examining implied employment contract cases, we always have required that the *promise* that is claimed to have altered the presumed at-will term *be sufficiently explicit* to give rise to reasonable expectations of termination for good cause only.") (emphasis in original).  Thus, the Court must determine whether Mardini's words were sufficiently explicit to give rise to a reasonable expectation by Smith that, if he presented Allstate with Dr. Keller's note, he would be hired.  Here, Smith has testified that Mardini told him he needed "a simple doctor's note . . . just a one-page type of letter explaining your disability" that Mardini could send to his superiors who had authority to waive the LEAP test.  This language is vague; certainly the note Smith submitted is simple and is no longer than one page, but whether the note "explains" Smith's disability is unclear.  Further, as already stated above, Mardini said that the note would result in waiver of the test, not a decision to hire Smith.  The Court finds that Mardini's statement was too vague to form the basis for an implied contract.

Nor does Smith's claim survive under a theory of promissory estoppel.  The elements of promissory estoppel are as follows:

> (1) An actual promise must have been made which in fact induced the promisee's action or forbearance; (2) The promisee's reliance on the promise must have been reasonable; (3) The promisee's action or forbearance must have amounted to a

14

substantial change in position; (4) The promisee's action or forbearance must have
been actually foreseen or reasonably foreseeable to the promisor when making the
promise; and (5) enforcement of the promise is required to prevent injustice.

*Strata Prod. Co. v. Mercury Exploration Co.*, 121 N.M. 622, 628, 916 P.2d 822, 828 (1996). Here,

the Court finds that not only is there an absence of an actual promise, as discussed above, but further

concludes that there was no reasonable detrimental reliance by Smith. Smith has argued in

conclusory fashion that he relied on Mardini's promise, but in fact he comes forward with absolutely

no evidence to show that he changed his position to his detriment in reliance on the conversation

with Mardini. Thus, to the extent that Smith's claim is one for promissory estoppel, Allstate is

entitled to summary judgment on that claim as well.

Finally, having found that there was no contract between the parties, the Court concludes that

Allstate had no duty of good faith and fair dealing. Accordingly, Allstate is entitled to summary

judgment on Counts II and III of the Amended Complaint.

**IT IS THEREFORE ORDERED** that *Defendant's Motion for Summary Judgment* [Doc.

No. 51] is **GRANTED**.

UNITED STATES DISTRICT JUDGE

15